**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 05-cv-0134-REB-BNB

MAX SOFTWARE, INC.,

    Plaintiff,

v.

COMPUTER ASSOCIATES INTERNATIONAL, INC.,

    Defendant.

---

**ORDER CONCERNING DEFENDANT'S MOTIONS TO DISMISS
AND MOTION TO COMPEL ARBITRATION**

---

**Blackburn, J.**

This matter is before me on the following motions: 1) Computer Associates' Motion to Dismiss and for Order Compelling MAX Software to Initiate Arbitration [#7], filed February 17, 2005; and 2) Computer Associates' Motion to Dismiss MAX's First Amended Complaint [#22], filed April 5, 2005.  After Computer Associates filed its February 17, 2005, motion to dismiss, the plaintiff filed its First Amended Complaint. The filing of the First Amended Complaint moots the first motion to dismiss, but does not moot CA's motion to compel arbitration.  I conclude that the motion to compel arbitration and CA's second motion to dismiss both should be granted.

## I. JURISDICTION & STANDARD OF REVIEW

The plaintiff, MAX Software, Inc. (MAX), asserts claims under federal and state law.  I have jurisdiction over the federal claims under 28 U.S.C. § 1331, and over MAX's copyright claim under 28 U.S.C. § 1338(a).  I have supplemental jurisdiction

over the state law claims under 28 U.S.C. § 1367, and diversity jurisdiction over these claims because the parties are citizens of different states, and the amount in controversy exceeds 75 thousand dollars.  28 U.S.C. § 1332.

In its original motion to dismiss, CA moved to dismiss all of MAX's claims because the contract between MAX and CA included a binding arbitration provision, and all of the claims asserted by MAX fell within the terms of the arbitration provision. Shortly after CA filed its first motion to dismiss, MAX filed its First Amended Complaint. As discussed below, the provisions of the Federal Arbitration Act, specifically 9 U.S.C. § 4, govern this aspect of CA's motion to dismiss.

In its amended complaint, MAX asserted two new claims alleging that the arbitration provision is not valid because CA waived its right to arbitration, CA fraudulently induced MAX to agree to the arbitration clause, and because the arbitration provision is unconscionable and violates public policy.  CA argues that these claims should be dismissed for failure to state a claim on which relief can be granted. When ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), I must determine whether the allegations set forth in the complaint, if true, are sufficient to state a claim within the meaning of FED. R. CIV. P.  8(a).  "[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." **Conley v. Gibson,** 355 U.S. 41, 45-46 (1957); see **Daigle v. Shell Oil Co.**, 972 F.2d 1527, 1533 (10th Cir.1992).  The complaint must be construed in the light most favorable to plaintiff, and its allegations must be taken as true. **Robinson v. City and County of Denver** 39 F. Supp. 2d 1257, 1262-1263 (D. Colo. 1999) (citing **Daigle v. Shell Oil**

*Co.*, 972 F.2d 1527, 1533 (10th Cir.1992)).  However, the court need not assume that the plaintiff "can prove facts which he has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." **Assoc. Gen'l Contractors v. Calif. State Council of Carpenters**, 459 U.S. 519, 526 (1983).

I find that CA's motion to dismiss MAX's claims challenging the arbitration provision should be granted.  I find  also that the balance of MAX's claims against CA are subject to the terms of the arbitration agreement between MAX and CA and that MAX must assert these claims under the terms of the arbitration provision.

## II.  FACTS

On April 15, 1998, MAX entered into a distribution agreement (Agreement) with Platinum Technology, Inc.  Under the Agreement, MAX granted Platinum the exclusive right to distribute and license to end-users a software product owned by MAX. Platinum was obligated to make certain minimum payments to MAX, and to pay royalties to MAX.  The Agreement included an arbitration provision.  The provision states,

> All disputes arising out of or related to this Agreement shall be submitted to a panel of three arbitrators appointed and operating under the rules of the American Arbitration Association, and to the extent it is consistent with those rules, operating under the Uniform Arbitration Act.  Each party shall appoint one arbitrator, and the arbitrators shall then appoint a neutral arbitrator.  The location of the arbitration hearing will be chosen by the party not initiating the arbitration.  The written decision of the arbitrators shall be final, binding, and convertible to a Court judgment in any appropriate jurisdiction.

*First Amended Complaint*, Exhibit 1, p. 23, ¶ 24.

Before the two year term of the Agreement had expired, CA acquired Platinum, and CA succeeded to Platinum's rights and obligations under the Agreement.  In 2000,

MAX and CA renewed the Agreement under the terms of the optional two year renewal clause in the Agreement.  MAX's allegations concerning the negotiations surrounding the renewal do not include any allegation that the arbitration provision was discussed, let alone opposed, during these negotiations.

In its complaint, MAX alleges that CA has had a long-standing and systematic practice of fraudulently underpaying royalties, both to cheat royalty recipients and to help artificially inflate CA's stock price.  MAX alleges also that CA began to market MAX's software product as CA's product after the distribution agreement had expired, violating MAX's copyright on its software.  MAX claims CA owes MAX additional royalties under the Agreement, and MAX seeks damages for CA's other alleged breaches of the Agreement, torts, unfair competition, and infringement of MAX's copyright.  MAX asserts the following claims related to the Agreement:

1) Breach of Contract;

2) Pre-Renewal Fraud;

3) Post-Contract Fraud;

4) Copyright Infringement;

5) Misappropriation of Trade Secrets;

6) Unfair Competition;

7) RICO Violation(Racketeer Influenced and Corrupt Organizations Act) (18 U.S.C. § 1962(c));

8) RICO Violation (18 U.S.C. § 1962(b));

9) COCCA (Colorado Organized Crime Control Act) Violation (§18-17-104(3), C.R.S.)

10) COCCA Violation (§18-17-104(2), C.R.S.)

      11) Theft (§18-4-405, C.R.S.)

      12) Nondisclosure of Concealment

      13) Colorado Consumer Protection Act

      14) Negligent Misrepresentation

      15) Unjust Enrichment

      16) Breach of Implied Duty of Good Faith and Fair Dealing;

In its First Amended Complaint, MAX also asserts two claims specifically related to the arbitration provision in the Agreement:

      17) Waiver - MAX alleges that CA waived its right to arbitrate under the arbitration provision of the Agreement;

      18) Fraud, Unconscionability, Public Policy - MAX alleges that the arbitration provision is unenforceable because CA fraudulently induced MAX to agree to the arbitration provision, the arbitration provision is unconscionable, and the arbitration provision violates public policy.

### III. ARBITRATION

Under the Federal Arbitration Act, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party aggrieved by another party's failure to arbitrate under the terms of written agreement for arbitration may seek from the court "an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Once the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

There is a strong federal policy favoring arbitration of disputes, and this policy requires a "liberal reading of arbitration agreements." ***Cone Mem'l Hosp. v. Mercury Constr. Corp.***, 460 U.S. 1, 23 n. 27 (1983).  Under § 4, the party seeking to require arbitration must show the existence of a valid and enforceable agreement to arbitrate. A court has jurisdiction to determine initially the existence of a valid arbitration agreement, unless the agreement clearly shows that the "parties intended to submit to an arbitrator the question of whether an agreement to arbitrate exists." ***Fuller v. Pep Boys***, 88 F. Supp.2d 1158, 1160-61 (D. Colo. 2000) (citation omitted).  The decision whether to enforce an arbitration agreement involves a two-step inquiry.  First, I must determine whether the parties agreed to arbitrate the dispute. ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth***, 473 U.S. 614, 626 (1985); ***Williams v. Imhoff***, 203 F.3d 758, 764 (10th Cir. 2000).  Then I must consider whether any statute or policy renders the claims non-arbitrable. ***Mitsubishi Motors Corp.***, 473 U.S. at 629-30; ***Williams***, 203 F.3d at 764.

With its newly added claims alleging that the arbitration provision in the Agreement was procured by fraud, is unconscionable, is against public policy, and that CA has waived its right to arbitrate, MAX argues that the making of the agreement for arbitration is at issue and those issues must be resolved by the court.  CA argues in its second motion to dismiss that MAX has failed to state a claim on which relief can be granted in any of its claims challenging the making of the agreement for arbitration.  CA asks that I dismiss MAX's seventeenth and eighteenth claims for relief, the claims challenging the validity of the arbitration provision.  Absent a claim challenging the validity of the arbitration provision, CA argues that it is entitled to an order requiring

6

MAX to submit its other claims against CA to arbitration, and an order dismissing MAX's other claims. MAX argues that it sufficiently has alleged claims challenging the validity of the arbitration provision, and that these claims must be resolved by the court. Absent a valid arbitration provision, MAX argues, all of its other claims also properly may be resolved by the court.

A.  Fraud Related to the Arbitration Provision

A specialized pleading standard is applicable in the circumstances presented by this case. When a party attacks not only a contract, "but also the arbitration clauses therein, as having been procured through fraud," the court must decide the fraud claims before compelling arbitration. ***Moseley v. Elec. & Missile Facilities, Inc***., 374 U.S. 167, 170-71 (1963). This requirement was further refined in ***Prima Paint Corp. v. Flood & Conklin Mfg. Co.***, 388 U.S. 395, 404 (1967). In ***Prima Paint***, the Court held that

> if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.
>
> *   *   *   *
>
> (I)n passing on a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.

388 U.S. at 403-04.

The application of the distinction outlined in ***Prima Paint*** has been refined in later cases. I agree with the approach adopted by the Second Circuit in ***Campaniello Imports, LTD v. Saporiti Italia S.p.A.***, 117 F.3d 655 (2nd Cir. 1997). In ***Campaniello***, the plaintiffs alleged that the defendants fraudulently had induced them to enter into an

7

exclusive distributorship agreement, as part of the settlement of a dispute concerning an earlier agreement. The exclusive distributorship agreement contained an arbitration provision requiring arbitration of disputes in Italy. The plaintiffs alleged that "(i)t was part of the [defendants'] scheme to include an arbitration-in-Italy clause which they hoped would prevent plaintiffs from seeking redress in the New York courts where the remedies for fraud were more extensive than in an arbitration in Italy." *Id*. at 666. The plaintiffs claimed that had they known the defendants' "true intentions, they would never have agreed to . . . the inclusion of the arbitration-in-Italy clause." *Id*.

Applying **Prima Paint**, the district court ordered arbitration to proceed, finding that the complaint did not demonstrate claims of fraudulent inducement and misrepresentation relating only the arbitration clause, as opposed to the entire agreement. **Campaniello Imports, LTD v. Saporiti Italia S.p.A. Id**., 1996 WL 437907, *9 (S.D.N.Y. August 2, 1996). Affirming the district court, the Second Circuit held that a district court must hear a fraud challenge to an arbitration provision only when there is

> some substantial relationship between the fraud or misrepresentations and the arbitration clause in particular. In **Prima Paint**, the Supreme Court clearly distinguished between fraud in the inducement of the arbitration clause itself, which may be considered by the federal court, and fraud in the inducement of the contract generally. 388 U.S. at 403-04, 87 S.Ct. At 1805-06. This distinction would be eviscerated if a claimant could transform a general fraud claim into fraud in the inducement of the arbitration clause merely by stating that the arbitration clause is an element of the scheme to defraud.

**Campaniello**, 117 F.3d at 667. The second circuit concluded that the **Campaniello** plaintiffs had not stated a valid fraud challenge to the arbitration provision because there was no indication that there was any misrepresentation or fraud related to the arbitration provision itself, and no allegations that the plaintiffs were not aware of the

8

content or import of the arbitration clause.  The plaintiffs "may not now establish a connection between the alleged fraud and the arbitration clause in particular merely by adding the allegation that the arbitration clause was part of the overall scheme to defraud." *Id*. at 668.

MAX alleges in its First Amended Complaint that arbitration, including the arbitration provision in the Agreement, "was an integral component of CA's related and interdependent schemes to fraudulently underpay royalties, criminally misrepresent its financial performance and illegally (manipulate) its stock price." *First Amended Complaint*, ¶ 287.  As summarized above, MAX also alleges more generalized claims of fraud related to the Agreement generally, as well as a variety of related claims.  In short, MAX alleges that arbitration was one tool used by CA in a much broader scheme of fraud.  This tool, MAX alleges, was used to make it difficult for MAX and similar victims to recover for CA's fraud and to conceal CA's fraud.  Arbitration, however, was not the lynchpin of CA's alleged fraudulent scheme.  MAX has alleged fraud in the inducement of its renewal of its distribution agreement with CA generally, and not fraud focused on inducement of the arbitration provision specifically.  As in **Prima Paint** and **Campaniello**, MAX cannot "transform a general fraud claim into fraud in the inducement of the arbitration clause merely by stating that the arbitration clause is an element of the scheme to defraud."

A similar analysis applies to MAX's other allegations challenging the validity of the arbitration provision.  MAX alleges that the use of arbitration provision to perpetuate and conceal CA's fraudulent and criminal schemes makes the arbitration provision unconscionable and in violation of public policy.  *Complaint*, ¶ 302, 303.

9

These claims have the same generalized focus as MAX's fraud claim. Fraudulent and criminal schemes are, by definition, unconscionable and against public policy. MAX cannot leverage this point, which is applicable to all of MAX's claims against CA, into a focused attack on the arbitration provision, and thus evade the requirements of 9 U.S.C. § 4.

MAX has failed to state a claim on which relief can be granted in its eighteenth claim for relief. This claim must be dismissed.

### B.  Waiver

MAX claims also that CA waived its right to arbitration under the terms of the arbitration provision. This is a focused attack on the arbitration provision. However, this claim also fails.

> Generally, waiver is the intentional relinquishment of a known right.
>
> Waiver of a contract term occurs when a party to the contract is entitled to assert a particular right, knows the right exists, but intentionally abandons that right. Waiver may be shown by a course of conduct signifying a purpose not to stand on a right, leading one, by a reasonable inference, to the conclusion that the right in question will not be insisted upon.

***High Country Movin', Inc. v. U.S. West Direct Co.***, 839 P.2d 469, 472 (Colo. App.1992) (citations omitted). The Tenth Circuit applies a more demanding standard to a claim that a party has waived arbitration:

> Parties seeking to prove waiver of arbitration obligations bear a heavy burden; they must show substantial prejudice. There is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case and usually calls for a finding by the trier of the facts. Under the federal policy favoring arbitration, a party does not waive arbitration merely by engaging in action inconsistent with an arbitration provision. Moreover, inconsistent behavior alone is not sufficient; the party opposing a motion to compel arbitration must have suffered prejudice.

***Adams v. Merrill Lynch, Pierce, Fenner & Smith***, 888 F.2d 696, 701 (10th Cir. 1989) (quotations and citations omitted).

MAX alleges that a CA official, Mr. Gilbert, told a MAX official that "CA would not arbitrate disputes under any circumstances." *First Amended Complaint*, ¶ 272. Discussing other agreements between MAX and CA, Gilbert allegedly wrote in an e-mail saying that CA has not been satisfied with the arbitration process, and that CA "will no longer enter into agreements that require arbitration in lieu of due process through the court system." *Id.* Finally, Nigel Espley, CA's Regional Vice President, allegedly sent an e-mail to a MAX official stating that CA has "a corporate policy against Arbitration." *Complaint*, ¶ 273.

Each of these alleged statements was made after MAX and CA had renewed the distribution agreement. None of these statements was directed at the Agreement at issue in this case. Rather, they are general statements about CA's purported dissatisfaction with arbitration generally. The statement that CA "will no longer enter into agreements that require arbitration" does not support MAX's waiver claim. A statement about the potential terms of future agreements cannot reasonably be read to waive the terms of an existing agreement. MAX could not reasonably rely on these statements as a waiver of the specific right to arbitration established in the Agreement between MAX and CA. I note further that MAX has not alleged reasonable reliance or prejudice in support of its waiver claim.

The facts alleged by MAX, if true, do not establish that CA waived its right to demand arbitration under the distribution agreement between MAX and CA. MAX's waiver claim must be dismissed.

11

### C.  MAX Must Arbitrate Its Claims

MAX concedes that its other claims against CA, claims one through sixteen of the First Amended Complaint, fall within the terms of the arbitration provision.  Absent a valid challenge to the arbitration provision itself, this court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

MAX argues that I should stay this case pending the outcome of arbitration.  CA argues that this case should be dismissed.  The Federal Arbitration Act provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending . . . shall on application of one of the parties stay the trial of the action . . ."  9 U.S.C. § 3.  Despite this language, the majority of federal courts hold that a district court may dismiss rather than stay a complaint when all claims therein are arbitrable.  *See, e.g.*, ***Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.***, 252 F.3d 707, 709-10 (4th Cir. 2001); ***Green v. Ameritech Corp.***, 200 F.3d 967, 973 (6th Cir. 2000); ***Fedmet Corp. v. M/V BUYALYK***, 194 F.3d 674, 678 (5th Cir. 1999); ***Bercovitch v. Baldwin School, Inc.***, 133 F.3d 151, 156 & n.21 (1st Cir. 1998); ***Sparling v. Hoffman Construction Co.***, 864 F.2d 635, 638 (9th Cir. 1988); ***Tupper v. Bally Total Fitness Holding Corp.***, 186 F.Supp.2d 981, 992-93 (E.D. Wis. 2002); ***Milgrim v. Backroads, Inc.***, 2001 WL 468244 at *5 (S.D.N.Y. May 1, 2001), ***aff'd***, 2002 WL 1358361 (2nd Cir. Jun. 21, 2002); ***Emeronye v. CACI International, Inc.***, 141 F.Supp.2d 82, 88 (D.D.C. 2001); ***Black and Veatch International Co. v. Wartsila NSD North America, Inc.***, 1998 WL 953966 at *4 (D.

Kan. Dec. 17, 1998). **But see Lloyd v. Hovensa, LLC**, 369 F.3d 263, 269-71 (3rd Cir. 2004).

Although the Tenth Circuit has not addressed this issue directly, it has intimated that a district court may dismiss when a party specifically requests dismissal rather than a stay. **See Armijo v. Prudential Insurance Co. v. America**, 72 F.3d 793, 796-97 (10th Cir. 1995).[1] Because all plaintiff's remaining claims are referable to arbitration, and because defendant has requested dismissal and seeks a stay only in the alternative, I will dismiss the complaint.

MAX also seeks an order directing that the arbitration take place in Colorado, and that the Federal Rules of Civil Procedure be applicable in the arbitration. Again, 9 U.S.C. § 4 requires that I direct the parties to arbitration "in accordance with the terms of the agreement." The agreement does not require arbitration in Colorado or under the Federal Rules of Civil Procedure. I will not add such terms to the parties' agreement by fiat.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1) That Computer Associates' motion to dismiss  [#7], filed February 17, 2005, is **DENIED** as mooted by the filing of the First Amended Complaint;

---

[1] In **Armijo**, the court found that it had jurisdiction of an appeal from order dismissing a case in which all claims were referred to arbitration. In so doing, it distinguished **Adair Bus Sales, Inc. v. Blue Bird Corp.**, 25 F.3d 953 (10th Cir. 1994), in which the court had found no appellate jurisdiction, vacated a district court's order of dismissal, and remanded with directions to stay the litigation, because the defendant in **Adair** had requested a stay, not dismissal. **Armijo**, 72 F.3d at 796-97 (citing **Adair**, 25 F.3d at 954-55).

2) That under FED. R. CIV. P. 12(b)(6), Computer Associates' Motion to Dismiss MAX's First Amended Complaint [#22], filed April 5, 2005, is **GRANTED** as to MAX's seventeenth and eighteenth claims for relief;

3) That under 9 U.S.C. § 3 and related authorities, Computer Associates' Motion to Dismiss MAX's First Amended Complaint [#22], filed April 5, 2005, is **GRANTED** as to MAX's first through sixteenth claims for relief because these claims are subject to the parties' arbitration provision;

4) That under 9 U.S.C. § 4, Plaintiff MAX Software, Inc. is **DIRECTED TO PROCEED TO ARBITRATION** in accordance with its agreement with defendant Computer Associates, Inc., if MAX wishes to pursue its claims against Computer Associates, Inc.;

5) That MAX's objection to Magistrate Judge Boland's order [#27], filed April 21, 2005, is **DENIED** as moot;

6) That MAX's motion for preliminary injunction [#36], filed July 6, 2005, is **DENIED** as moot; and

7) That this case is **DISMISSED** *en toto*.

Dated September 23, 2005, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge